Corn, J.
(orally).
Pleard on motion to dismiss the appeal.
This case is presented to the court upon a motion to dismiss the appeal upon the ground that no appeal bond or undertaking in appeal was entered into as prescribed by law. The motion to *413 dismiss contains a number of assignments but briefly stated they all mean the same thing.
No question is raised, and none can be raised, that this is not an appealable case.
It is conceded that by Section 10382, General Code, the defendant is given the right to appeal from the final judgment of the justice of the peace to the court of common pleas.
The question raised by the motion and record here is, that that right has not been properly saved.
The facts that appear from the record and the oral testimony are these: the plantiff filed its bill of particulars before W. N. Neal, one of the justices of the peace, on August 6th, 1910, demanding a judgment against the defendant for the sum of $57.18, with interest, and a summons was issued and served requiring the defendant to appear and defend on the 16th day of August, 1910; on that date, the defendant failing to appear, judgment by default was- entered against it for $65.74 and $5.50 costs. Within the ten days, to-wit, August 24, the defendant appeared at the justice’s office in Upper Township with its surety for the purpose of executing an appeal bond and found the justice who had rendered the judgment absent from his office and from the county and state, having gone to French Lick Springs in the state of Indiana; on the following day the defendant again appeared with its surety and thereupon an appeal bond was prepared and signed on the blank provided in the docket of the justice of the peace, and this bond so prepared and signed was approved by O. W. Shafer, another justice of the peace of Upper Township who had received a telegraphic request from Justice W. N. Neal, who had tried the case, to act for him in the matter of the approval of the bond; in addition to this another bond on a separate sheet, and an exact copy of the one signed in the docket, was signed by the same surety and left with the papers in the justice’s office; no approval of this paper was ever endorsed upon it by anyone; at the same date an exact copy of the bond written in the docket and signed by the same surety was mailed to the trial justice at French Lick Springs, Indiana, and there, on the 26th day of August, 1910, approved by him; upon his return to hs office, after August 27, and about the 4th day * of September, 1910, as appears from the affidavit of C. C. Clarke, the *414 trial justice entered upon the bond which had been prepared and signed in his docket and approved by Justice Shafer his own approval of the bond and surety and signed his name thereon as justice of the peace.
Now, upon these facts, is the defendant to be deprived of his right to appeal to the court of common pleas — to his right to a day in the appellate court?
The right of appeal is a substantial and an important one. Our Supreme Court, in the case of Bode, Admx., v. Welch, 29 O. S., at page 21, say:
“The right to appeal from a subsisting judgment is available and ought to be as sacred as the right to bring the original action, or to defend against it. The giving of notice, and the execution of the appeal bond, are not acts by which the right to appeal is acquired; they are acts by which it is saved. The riglit to appeal accrued when this judgment was entered, and was- just as valuable.and sacred before the bond was executed as after-wards. Until the time allowed .by law for taking steps toward an appeal — until the expiration of the ten days allowed in this case — the right remained in abeyance. When the bond was executed it relates back to the day of the judgment, equally as if the bond had been executed, instanter. The execution of the appeal bond at any time within the period .allowed by law, secures to the appellee all the rights he could have acquired by executing it at any other time within that period.”
But it may be said that defendant has had its day in court before the justice of the peace. That is true, but it is equally entitled as of right to a day in this court — and in such eases as this is, a most substantial right. To use the language of the Supreme Court in the ease of Bode, Admx., v. Welch, supra:
“The judgment from which the appeal is sought may have been taken pro forma, or without the necessary preparation for a full .and fair trial, the party relying exclusively or mainly upon his right to appeal.”
Section 16 of our Bill of Rights provides:
“All courts shall be open, and every person, for an injury done in his land, goods, person or reputation, shall have remedy by due course of law; and justice administered without denial or delay.”
*415 And also Article XIY of the Federal Constitution provides that:
“No state shall deprive a person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.”
It seems to me that to deny or deprive any litigant of his right to appeal when he has' exhausted every effort to perfect that right would be to deny him the equal protection of the laws.
Judge Spear of our Supreme Court has said:
“It is the duty of our courts to override mere technicalities where they stand in the way of doing justice between man and man. ’ ’
It appears from the evidence in this case that defendant did, within the time limited by the law, exhaust every effort known to those skilled in the law, not only to have this bond signed and filed in the office of the justice, .but to procure the trial justice’s approval thereof; but on account of the absence of the justice from the county and state, his approval was not entered upon the bond within that time; surely, then, the rule applies that “actus curiae neminem gravabit,” which, being interpreted, means that an act of the court should prejudice no man.
In the case of Ohio, ex rel Crigler, v. Block, J. P., 3 W. L. B., 792, it is held:
“The duty of the magistrate is to approve the surety, and so far as appears from the affidavit, he made no objection to the surety. If the relator had executed the bond, and there being no objection to the surety, he had left the bond with the justice, or offered to leave it, and then filed his transcript, the ease would have fallen within the case of The Public v. Renning, which decides that the party shall not be deprived of his right to appeal by neglect of duty on the part of the court, where he had done all that was required of him. ’ ’ ■
The defendant as before stated did all this and more, and in this case no objection is or can be made to the sufficiency of the surety on the bond offered by the defendant.
It will be noticed, too, that while Section 10383, General Code, requires the bond to be executed within ten days from the time judgment was rendered, it does not in terms require its approval by the justice within ten days. The language is:
*416 “Within ten days from the time a justice renders judgment, the party appealing therefrom must give a bond to the adverse party, with at least one sufficient surety to be approved by such justice. ’ ’
The justice must approve the surety, but there is nothing in the law which prevents his approval at any time within the time prescribed for the filing of the transcript in the court of common pleas.
Counsel for plaintiff cites the different sections by which one justice is authorized to act for another and fails to find -any provision in any of these sections which would authorize Justice Shafer to represent and act for Justice Neal in a case like this one, and urges the rule of “expressio. unius est exclusio alterius” —the express:on of one or more things is the exclusion or negation of all others. This rule, it seems, if applied to this and similar cases, could easily work a hardship and injustice; a dishonest and susceptible justice of the peace might render a wholly unwarranted and unjust judgment without any evidence or claim of right, and by immediately absenting himself from the state until the expiration of the time limited for appeal, could prevent an appeal and thus enforce a corrupt judgment. No court of justice in the and could tolerate such a thing, and this is said without any reference whatever to the present case, for Justice Neal had, by reason of the condition of his health, a good reason for leaving the state when he did, but it is used in argument to show that the action of a trial justice in simply absenting himself from his office should not, by reason of the manifest injustice, prevent a party from exercising his right to appeal.
The plaintiff loses nothing, can lose nothing, by refusing this motion; while, if granted, the defendant would be deprived, by no fault, neglect or failure on its part, of a most substantial and. 'important right — the right to appeal to, and be heard by, the court of common pleas. Courts sit to dispense justice, to afford to everyone the equal protection of the laws and, as before stated, the court must not allow technicalities to stand in the way of doing justice between man and man.
The motion to dismiss the appeal will, therefore, be refused. ’